UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE SHERWIN-WILLIAMS COMPANY, ) | CASE NO. 5:12CV03052 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER AND DECISION** |
| THE WOOSTER BRUSH COMPANY, ) | |
| ) | (Resolving Docs. 96-1, 120-1) |
| Defendant. ) | |

This matter is before the Court on the parties cross motions for partial summary judgment filed by Plaintiff, The Sherwin-Williams Company and Defendant, The Wooster Brush Company. Doc. 96-1, 120-1. The Court finds that genuine issues of material fact exist on certain issues described below and therefore, the Court GRANTS Plaintiff's motion IN PART and DENIES it IN PART. Likewise, the Court DENIES Defendant's summary judgment motion.

**I. FACTS AND PROCEDURAL HISTORY**

These facts are not in dispute:

Since 1925, Purdy has made painting tools for professional painters and do-it-yourselfers ("DIYers") under the Purdy brand. Doc. 95-7 at ¶¶5-6. As early as 2000, Purdy began using color code to distinguish certain paint brushes. Doc. 95-7 at ¶8. Among other colors, this color code includes brown to distinguish the Purdy XL nylon/polyester filament brushes, green to distinguish the Nylox 100% nylon filament brushes, and light blue to distinguish the white bristle brushes. Doc. 95-7 at ¶8; Doc. 12 at ¶13.

Plaintiff The Sherwin-Williams Company ("Sherwin") acquired Purdy Corporation in 2004. Doc. 95-7 at ¶7. Sherwin then launched a market review in which it conducted

ethnographic research, hired outside consultants, and conducted multiple focus groups to evaluate potential packaging designs. Doc. 106 at 61-62, 64, 102-104, 111, 180-81. In March of 2011, Sherwin began selling its Purdy paint brushes in the re-designed packaging (the "Brush Keeper Trade Dress"). Doc. 96-27. This packaging was introduced as a "soft conversion, " meaning Sherwin sold the Purdy brushes in the new packaging while allowing the brushes in the old packaging to be sold off by distributors who had purchased them already. Doc. 96-27 at ¶12. Sherwin sold its brushes with the redesigned Brush Keeper Trade Dress in its own stores and in "big box" stores like The Home Depot (sometimes, "THD").

Defendant The Wooster Brush Company ("Wooster") was founded in Wooster, Ohio in 1851, where it continues to manufacture paint applicators. Doc. 120-1 at 15. It is one of Sherwin's primary competitors in the paint brush industry. Doc. 96-21 at ¶17. Wooster's products have been sold in paint stores, hardware stores, and in home centers such as Lowes. Doc. 120-1 at 15. In addition to the line of paint brushes at issue here, Wooster has eight other lines of products currently on the market, including an "All Pro" line. Doc. 120-1 at 15.

In June of 2011, The Home Depot conducted a product review for its paint applicators, with many different companies presenting products to THD for consideration. Doc. 110 at 217; Doc. 120-1 at 19. At that time, Purdy was the primary professional paint applicator brand sold at THD. Doc. 114 at 279. Months later, The Home Depot directed Wooster to develop packaging that would be "somewhat similar" to the Purdy packaging, and in November of 2011, THD formally awarded Wooster a portion of their professional brush business. Doc. 110 at 217-218.

Between November of 2011 and late January of 2012, The Home Depot and Wooster worked on developing the name and packaging for what would become the Wooster Pro line of brushes to be sold exclusively at THD. The Home Depot initially wanted a private label brand

2

that looked similar to the Purdy packaging but Wooster later included their name on the brush keeper – after seeking a legal opinion from outside trademark counsel and requesting a "hold harmless" agreement if THD insisted on going forward with a non-Wooster branded package. Doc. 110 at 128, Doc. 107 at 129-130. In November of 2011, THD informed Sherwin that it was eliminating certain units of the Purdy XL (brown) and Nylox (green) brushes, posing a significant financial loss to Sherwin. Doc. 114 at 294; Doc. 109 at 100.

In June of 2012, THD engaged in a full planogram reset of the Wooster Pro line of brushes, which removed certain Purdy brushes and then placed the Wooster Pro brushes next to the remaining Purdy XL brushes. Doc. 110 at 105-106; Doc. 114 at 36. Both brands featured brown color coding. By September of 2012, Wooster began selling 100% nylon Wooster Pro brushes that featured a green color code. Doc. 110 at 131-33. At this same time, Purdy's Nylox brush also featured a green color code. Then, in October of 2012, Wooster began selling china bristle Wooster Pro brushes in packaging that featured a light blue color code. Doc. 110 at 131-33. Likewise, Sherwin also featured a Purdy white bristle brush with light blue color code at this same time.

In December of 2012, Sherwin filed the underlying Complaint against Wooster. It then amended its Complaint and asserted claims for Infringement of the Brush Keeper Trade Dress under 15 U.S.C. §1125(a), Infringement of Color Code Trade Dress under 15 U.S.C. §1125(a), Deceptive Trade Practices under Ohio Statutory and Common Law, and Unfair Competition and Trade Dress Infringement under Ohio Common Law. Wooster filed a counterclaim seeking Declaration of Noninfringement and alleging Common Law Unfair Competition. Both parties filed cross motions for partial summary judgment.

## II. LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Further, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

### III. LEGAL ANALYSIS

#### A. *Sherwin's Motion for Partial Summary Judgment*

1. Functionality

Sherwin filed a motion for summary judgment on the issue of whether the Brush Keeper Trade Dress and Color Code Trade Dress are functional. After reviewing the law and evidence, the Court finds that they are not functional.

The Lanham Act's protection of registered trademarks also extends to unregistered trade dress. *Gray v. Meijer,* 295 F.3d 641, 645 (6th Cir. 2002). Trade dress has been described by the Supreme Court as the "'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer or source.'" *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 423 F.3d 539, 548 (6th Cir. 2005) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 28, 121 S.Ct. 1255 (2001)).

> Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, [that] make[s] the source of the product distinguishable from another and…promote[s] its sale. Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.

*Id.* at 547 n.10 (internal citation omitted).

A party seeking to recover for trade dress infringement must prove "…by a preponderance of the evidence that (1) the trade dress is not functional; (2) the trade dress is distinctive in the marketplace and has acquired 'secondary meaning,' thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar." *Gen. Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 414-15 (6th Cir. 2006) (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 120 S.Ct. 1339 (2000)); *Abercrombie & Fitch Stores,*

5

*Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 633 n.10 (6th Cir. 2002).  Traditionally, "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs, Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 850 n.10 (1982) (*citing Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 232, 84 S.Ct. 784, 789 (1964)). A feature is functional "…if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165, 115 S.Ct. 1300, 1304 (1995).

To prevail on a claim for trade dress, the party asserting the right must do more than identify in litigation a combination as "the trade dress." *General Motors*, 468 F.3d at 415. "'Rather, the discrete elements which make up that combination should be separated out and identified in a list.'" *Id*.

> [F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.

*Id.*

Here, Sherwin argues for two types of non-functional trade dress: 1) the Brush Keeper Trade Dress; and 2) the Color Code Trade Dress.

### a.  *Brush Keeper Trade Dress*

Sherwin alleges the following specific elements are part of an overall scheme, which constitutes the Brush Keeper Trade Dress:

- A distinctive shade of golden yellow as the background color;
- A small, partial image of the American flag, located at the very top and center of the brush keeper;
- A thick horizontal color band based on the Color Code Trade Dress (as defined below) going all the way across the brush keeper, approximately one-third of the way down the front of the brush keeper;

- Thin gold bands bordering the top and bottom of the aforementioned thick horizontal color band;
- The brand name ("Purdy") in large font on the top one-third of the brush keeper;
- A description of the type of brush bristle (*e.g.*, nylon/polyester, 100% dyed nylon, 100% natural white bristle, etc.) in a smaller font beneath the brush name, located inside the thick horizontal band of color;
- A description of the type of paint for which the brush is designed (*e.g.*, all paints and stains, latex paints, oil-based paints, stains and clears, etc.) in font roughly the same size as the font used to designate the type of brush bristle, located beneath the thick horizontal band of color;
- A horizontal line that extends almost the entire width of the front of the brush keeper beneath the description of the type of paint for which the brush is designed; and
- As description of the brush's primary attribute directly beneath the aforementioned horizontal line.

Doc. 12-1.

Wooster argues that each individual element is generic and cannot be considered trade dress because it would put "competitors at a competitive disadvantage because they would need to 'design around' these common elements." Doc. 120-1 at 18. First, Wooster argues that the use of the American flag is not protectable as trade dress since it is a common image. Doc. 130-1 at 24. Next, Wooster argues that it actually "…has priority in the use of yellow over Purdy, and many third parties have used yellow and gold on professional grade paint applicator packaging for decades." Doc. 120-1 at 18-19. Wooster argues that the "color gold is used to symbolize prestige or high quality." Doc. 130-1 at 16.

In support of its argument, Wooster cites the Seventh Circuit Court of Appeals in *Publications Intern, Ltd. V. Landoll, Inc.*, stating: "But the color gold on a product or its package is a prime example of aesthetic functionality." *Publications Intern, Ltd. V. Landoll, Inc.,* 164 F.3d 337, 342 (7th Cir. 1998). However, this argument fails. "The Sixth Circuit expressly has not adopted the concept of aesthetic functionality and has questioned its validity." *The Sherwin-Williams Company v. JP International Hardware, Inc.*, 988 F.Supp.2d 815,819 (N.D. Ohio

7

2013) (citing *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.,* 679 F.3d 410, 417-418 (6th Ci. 2012) ("[W]e have not yet plainly stated which test we would apply under aesthetic functionality doctrine …or that we have even adopted aesthetic functionality doctrine at all.")).

Instead, the Sixth Circuit has adopted the "competition theory of functionality" to determine whether a trademark is functional and, thus, not enforceable. Under the competition theory of functionality, the Sixth Circuit considers two different tests – the "comparable alternatives" and the "effective competition" tests:

> The test for comparable alternatives asks whether trade-dress protection of certain features would nevertheless leave a variety of comparable alternative features that competitors may use to compete in the market. If such alternatives do not exist, the feature is functional; but if such alternatives do exist, then the feature is not functional…The effective competition test asks…whether trade dress protection for a product's feature would hinder the ability of another manufacturer to compete effectively in the market for the product. If such hindrance is probable, then the feature is functional and unsuitable for protection. If the feature is not a likely impediment to market competition, then the feature is nonfunctional and may receive trademark protection.

*Maker's Mark,* 679 F.3d at 418.

Here, the use of the American flag and color yellow are not functional. They are "...not essential to the use or purpose of the paint brushes sold by Sherwin-Williams -- they could be sold in a blank brush keeper." *The Sherwin-Williams Company,* 988 F.Supp.2d at 819 (holding that the Sherwin-Williams XL Brush Keeper Trade Dress is not functional). Sherwin's use of the flag and gold color to mark its paint brushes is arbitrary and unrelated to the functioning of the brush keeper itself to hold the brush. Wooster seems to blend its argument for functionality and distinctiveness, arguing many other companies have used various shades of yellow and the American flag on their packaging. However, the question of whether Sherwin has sufficiently

8

protected the use of the flag or the color gold or yellow is not an inquiry as to *functionality* but a separate element in the trademark analysis.

As Wooster points out, it has a long history of making its own brush keepers with different looks and sometimes using a shade of the color yellow and sometimes using other colors or marks. This very fact underscores the arbitrary and non-functional nature of the background of the brush keeper. Furthermore, Wooster admits that is was charged by The Home Depot to create a brush keeper that looked "somewhat similar" to the Sherwin brush keeper, while still maintaining other lines of brushes. This demonstrates that competitors in the market have choices in their use of color and design elements while still maintaining the practical use of the brush keeper.

Finally, the color gold used on the Sherwin brush keeper is one of several elements that combine to form a scheme or overall packaging look. "Even if the elements" of a claimed trade dress "[a]re all separately functional…[the] arrangement of these features can constitute more than the sum of its non-protectable parts." *Abercrombie*, 280 F.3d at 644. "[T]he critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress as a whole is functional." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*, 87 F.3d 654, 658 (4th Cir. 1996). Looking at all the elements of the Sherwin's brush keeper packaging, a colleague on the Court previously considered Sherwin's trade dress functionality, finding: "To the extent that these elements convey information to painters, the arrangement and selection of these elements is arbitrary and Sherwin-Williams' specific arrangement is unique in the painting tool industry." *The Sherwin-Williams Company v. JP International Hardware, Inc.*, 988 F.Supp.2d at 819. The Court hereby

9

adopts the same finding of functionality as the court in *The Sherwin-Williams Company v. JP International Hardware, Inc.*:

> The XL Brush Keeper Trade Dress is not functional under the "comparable alternatives" test because it is unique among paint brush packages and "[t]here is more than one way to [package a paint brush] to make it look appealing." [internal citations omitted] Moreover, the XL Brush Keeper Trade Dress is product package and not a feature of the paint brush itself. Similarly, the XL Brush Keeper Trade Dress is not functional under the "effective competition" test because Sherwin–Williams' exclusive use of the XL Brush Keeper Trade Dress does not affect in any way the ability of other manufacturers to compete effectively in the market for paint brushes. In this respect, Sherwin–Williams' XL Brush Keeper Trade Dress is similar to the red wax trade dress at issue in *Maker's Mark:* there, the Sixth Circuit upheld the district court's ruling that Maker's Mark's red wax seal for its liquor bottle was not functional because it is not "the only pleasing color of wax ... nor does it put competitors at a significant non-reputation related disadvantage to be prevented from using red dripping wax." [citations omitted] This reasoning is even more applicable to pure product packaging such as the XL Brush Keeper Trade Dress used by Sherwin–Williams—it is a package upon which an infinite array of designs could be applied. Neither Defendant nor any competitors of Sherwin–Williams need to use a similar—let alone a virtually identical—design. Therefore, the XL Brush Keeper Trade Dress is not functional under any functionality test adopted by this Circuit.

*Id.* at 819-20.

### b. *Color Code Trade Dress*

Sherwin argues that the Color Code Trade Dress "consists of an arbitrarily chosen color for each type of brush in the Purdy line, namely:"

- The color brown signifies a nylon/polyester blended bristle brush;
- The color green signifies a 100% nylon bristle brush;
- The color light blue signifies a white China bristle brush;
- The color red signifies a black china bristle brush;
- The color blue signifies a nylon/Chinex® nylon/polyester blended bristle brush;
- The color purple signifies an ox-hair bristle brush; and
- The color orange signifies a nylon/Chinex® nylon blended bristle brush

Doc. 12-1.

Wooster argues that "[c]olor coding is used for one reason – to be functional in informing potential customers about some feature of the brush, such as the type of filament or type of paint

10

with which the brush is to be used. Granting [Sherwin] exclusive rights to any type of color coding would hinder the ability of any other paint brush manufacturer to compete effectively in the market." Doc. 130-1 at 21. This argument fails as a matter of law.

Here, Sherwin is not arguing that it has rights generally to the concept of color-coding on brush keepers. Instead, it argues that the specific color coding for its brush keepers is comprised of arbitrary colors that have acquired some meaning to consumers as recognizable in association with Sherwin brushes only. Sherwin specifically objects to Wooster's use of the green-brown-light blue color-coding included in Wooster's packaging after THD requested that a similar line of brush keepers in order to compete with Sherwin.

In their briefing, Wooster emphasizes that it has other separate lines of brushes with their own brush-keeper packaging. Wooster describes in detail the past strength of its brushes in the market and states that, in addition to the keepers at issue, Wooster continues to manufacture other lines of brushes – demonstrating that it has comparable alternatives to Sherwin's Color Code Trade Dress and it continues to effectively compete in the market without the trade dress at issue. Sherwin's Color Code Trade Dress is not functional and does not place Wooster "at a significant non-reputation-related disadvantage" if it were forced to adopt a different scheme from its Wooster Pro line. *See Kerr Corp. v. Freeman Mfg. & Supply Co.,* 2009 WL 750986 (6th Cir. 2009) (Sixth Circuit found that a wax manufacturer's overall color code scheme was not functional); Doc. 95-6 at RFA 57 (…"Wooster admits that the elements and colors used on its (and on competitors') various brush keeper packaging has no effect on the cost, quality, purpose or use of the actual paint brushes.").

Given all of this, no genuine issues of material fact exist as to whether Sherwin's Brush Keeper Trade Dress and Color Code Trade Dress are functional. They are not. As such,

Sherwin is entitled to judgment as a matter of law on the issue of non-functionality and the Court GRANTS Sherwin's motion for summary judgment IN PART.

### 2. Inherently Distinctive

Sherwin asks this Court to render summary judgment on the issue of whether its Brush Keeper Trade Dress is inherently distinctive. However, the Court finds that genuine disputes of material fact exist that preclude judgment as a matter of law. Therefore, Sherwin's motion for summary judgment is DENIED IN PART.

Sherwin argues that its Brush Keeper Trade Dress and Color Code Trade Dress are inherently distinctive. As described above, trade dress is the "'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer or source.'" *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 423 F.3d 539, 548 (6th Cir. 2005) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 28, 121 S.Ct. 1255 (2001)). "The attribution of inherent distinctiveness to …product packaging derives from the fact that the very purpose of…encasing [a product] in distinctive packaging, is most often to identify the source of the product." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 212 (2000). Thus, "product packaging…normally *is* taken by the consumer to indicate origin." *Id.* at 215 (emphasis in original).

Sherwin points to its use of the specific elements set forth in the previous section to support its argument that the overall scheme of the Brush Keeper Trade Dress and Color Code Dress are inherently distinctive and have gained secondary meaning, pointing to Sherwin/Purdy as the origin. Wooster opposes the argument by pointing out that certain elements, such as the color yellow, the American flag, and use of color coding in general have been used by Wooster or other competitors in the past. For example, Wooster argues that, as far back as 1998, other

Wooster brush lines have used the color yellow, color banding, and the American flag. In fact, Purdy sent a letter to Wooster in 1998, objecting to Wooster's use of the these elements. Therefore, Wooster argues that the elements listed above cannot be inherently distinctive or have gained secondary meaning in favor of Sherwin.

The Court finds that genuine issues of material fact exist as to whether the specific elements separately or combined as an overall scheme are inherently distinctive and/or have acquired secondary meaning. A reasonable factfinder could find for either party. As such, judgment as a matter of law is inappropriate, and the Court denies Sherwin's motion for summary judgment on this issue.

3. Laches

Wooster has asserted the affirmative defense of laches. "The question of laches is primarily addressed to the discretion of the trial court." *SCI Sys., Inc. v. Solidstate Controls, Inc.,* 748 F.Supp. 1257, 1261 (S.D. Ohio 1990) (citing *Czaplicki v. Hoegh Silvercloud,* 351 U.S. 525, 534, 76 S.Ct. 946, 951 (1956)). "Laches arises from an unreasonable delay in enforcing one's rights which materially prejudices the alleged infringer. A plaintiff, however, is entitled to some latitude to assess the impact of another's use of an allegedly infringing trademark and the wisdom of pursuing litigation on the issue; there is a strong presumption that plaintiff's delay is reasonable as long as the analogous statute of limitations has not elapsed." *Id.* (citations omitted). In Ohio, the statute of limitations for trademark infringement, unfair competition claims under common law, Lanham Act and the Ohio Deceptive Trade Practices Act is two years. O.R.C. 2305.10; *Ameritech, Inc. v. American Information Technologies Corp.,* 811 F.2d 960 (6th Cir. 1987); *Prakash v. Altadis U.S.A. Inc.,* No. 5:10-CV-33, 2012 WL 1109918 (N.D. Ohio Mar. 30, 2012).

13

Wooster argues that Sherwin objected to Wooster using the color yellow, the American flag and color banding as set forth in the letter by Sherwin's predecessor, Purdy, in 1998. However, it is undisputed that The Home Depot did not request Wooster to design a brush keeper similar to Sherwin until 2011 and the newly designed Wooster Pro line did not launch until June 2012. It is this launch of the Pro line of brush keepers that gave rise to the litigation and started the statute of limitations running. The underlying lawsuit was filed on December 14, 2012, well within the statute of limitations. As such, given the "strong presumption that a plaintiff's delay is reasonable" and the facts herein, no genuine dispute of material fact exists. Sherwin is entitled to summary judgment on Wooster's defense of laches, and the Court GRANTS Sherwin's motion for summary judgment IN PART.

**B.** *Wooster's Motion for Summary Judgment*

Wooster filed its own cross-motion for summary judgment on various issues:

1) Is the Purdy Brush Keeper Trade Dress protectable as unregistered trade dress?
    a. Is the Brush Keeper Trade Dress functional?
    b. Is the Brush Keeper Trade Dress inherently distinctive?
    c. Has the Brush Keeper Trade Dress acquired distinctiveness through secondary meaning?

2) Is the Purdy Color Code Trade Dress protectable as unregistered trade dress?
    a. Is the Color Code Trade Dress functional?
    b. Is the Color Code Trade Dress inherently distinctive?
    c. Has the Color Code Trade Dress acquired distinctiveness through secondary meaning?

3) If this Court finds that Purdy Trade Dress is protectable as unregistered trade dress, is there a likelihood of confusion between the Wooster Pro brush keeper trade dress and the Purdy brush trade dress?

The Court has previously analyzed the first two issues above, finding that the Brush Keeper Trade Dress and Color Code Trade Dress are nonfunctional and that a genuine issue of material fact remains as to whether both Trade Dresses are inherently distinctive and/or acquired

secondary meaning. As such, Wooster's motion for summary judgment is DENIED, consistent with the analysis above.

Because the Court has not ruled that the Purdy Trade Dress is protectable as unregistered Trade Dress, the Court declines to consider the third issue presented by Wooster.

## IV. CONCLUSION

Based upon the reasons stated herein, no genuine issue of material fact exist on the issues of functionality and laches. As such, Sherwin's motion for summary judgment is GRANTED IN PART. However, genuine disputes of material fact remain on the issues of inherently distinctive and whether the trade dresses at issue have acquired secondary meaning. Therefore, Sherwin's motion for summary judgment is DENIED IN PART. Wooster's motion for judgment as a matter of law is DENIED.

IT IS SO ORDERED.


DATE: March 31, 2015          */s/ John R. Adams*_____
                              Judge John R. Adams
                              UNITED STATES DISTRICT COURT